# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                              CRIMINAL ACTION NO. 5:16-cr-00019-02

MARK RADCLIFFE,

        Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the Defendant's *Renewed Motion for Judgment of Acquittal* (Document 179) and the *United States Response to Defendant's Motion for Judgment of Acquittal* (Document 181). In addition, the Court has reviewed the Defendant's *Motion for New Trial* (Document 180), the *United States Response to Defendant's Motion for New Trial* (Document 182), and the *Defendant's Response to March 22, 2017 Order* (Document 215). For the reasons stated herein, the Court finds that the motion for judgment of acquittal should be granted in part and denied in part, and the motion for a new trial should be denied in part, and remain held in abeyance.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case began when Seth Radcliffe, the son of Defendant Mark Radcliffe, was indicted on charges of kidnapping and brandishing a firearm during a crime of violence on January 26, 2016. On April 28, 2016, the United States obtained a Superseding Indictment, which added a third count alleging that Seth Radcliffe and Mark Radcliffe, together with Jimmie Harper, Jr., who

was charged separately, conspired to tamper with a witness to influence her testimony.[1] On August 9, 2016, less than a week before the August 15, 2016 trial date, the United States obtained a *Second Superseding Indictment* (Document 125) against Mark Radcliffe.

In the Second Superseding Indictment, Mark Radcliffe was charged in Count One with conspiring with Jimmie Harper, Jr., and others to "use intimidation, threats, and to corruptly persuade another person ("M.S.") [the alleged kidnapping victim], and to engage in misleading conduct toward M.S., with the intent to influence, delay, and prevent the testimony of M.S. in an official proceeding," in violation of 18 U.S.C. § 1512(k). (Second Superseding Indictment, at 1-2.) It was alleged that the conspiracy took place approximately between December 23, 2015 and January 26, 2016. In Count Two, Mark Radcliffe was charged with aiding and abetting Jimmie Harper, Jr., "to endeavor to corruptly influence, obstruct and impede the due administration of justice in the January 2016 Federal Grand Jury in the Southern District of West Virginia, by attempting to influence, obstruct, and impede a kidnapping investigation" in violation of 18 U.S.C. §§ 1503 and 2. (*Id*. at 3.) It was alleged that the obstruction of justice occurred approximately between January 24, 2016 and January 26, 2016.

The Court granted a motion to continue the trial date after the Second Superseding Indictment was filed, and trial was rescheduled for October 17, 2016. The Defendant filed a motion to dismiss Count Two of the Second Superseding Indictment, asserting that he could not properly be charged with violations of both § 1512(k) and § 1503, for the same alleged conduct. The Court denied the motion to dismiss, finding it appropriate to hear the evidence at trial and

---

[1] Seth Radcliffe died on May 18, 2016, and the United States dismissed the superseding indictment filed against him.

"determine whether multiple sentences [could] be imposed only if the United States obtain[ed] convictions on both counts." (Mem. Op. and Order, at 6) (Document 161.)

A jury trial began on October 17, 2016, and continued through October 20, 2016. Mark Radcliffe was found guilty of both counts. The United States presented evidence that M.S. had ended a relationship with Seth Radcliffe, though the two continued to see each other and communicate. Seth Radcliffe went to M.S.'s house with a gun on December 23, 2015, threatening to shoot himself and/or M.S. A neighbor witnessed some of the events, and Seth Radcliffe pointed his gun at her and attempted to fire it. M.S. ultimately got into the car with Seth Radcliffe, who drove her to North Carolina. They stopped briefly at his brother's house, and the car was eventually pulled over by the police. M.S. called Jimmie Harper,[2] a friend of Seth Radcliffe, from the car as police attempted to stop Seth Radcliffe. Mr. Harper's sister is married to a relative of the Radcliffes, and she contacted Mark Radcliffe and his wife, Seth's mother. Mark Radcliffe then called Mr. Harper; they spoke twice that night. Mr. Harper testified that he and Mark Radcliffe agreed that they needed to talk to M.S. before she talked to the police to try to protect Seth Radcliffe.

Phone records showed many more calls between Mr. Harper and M.S. and between Mr. Harper and Mark Radcliffe in the following days and weeks. Mr. Harper testified that M.S. told him the details of Seth Radcliffe's actions, which revealed that Seth Radcliffe kidnapped her at gunpoint, and that he relayed those details to Mark Radcliffe. Seth Radcliffe wrote a letter with

---

2 Mr. Harper was the United States' primary witness implicating Mark Radcliffe. Mr. Harper's credibility was at issue: he admitted to a history of lying and to hopes of receiving a sentence reduction in return for his testimony. Before this trial, Mr. Harper pled guilty and received a lengthy sentence both for witness tampering in connection with this case, and for arson, after burning his home down for insurance money prior to the kidnapping. He also admitted long-term involvement in the manufacture and distribution of synthetic marijuana.

an account of the evening during which M.S. was allegedly kidnapped. The letter suggested that he was suicidal and M.S. went with him voluntarily because she was concerned he would harm himself. The final page of the letter was a list of bullet points highlighting portions of the story that Seth Radcliffe considered particularly important to show that M.S. had not been kidnapped. Mark Radcliffe picked the letter up from Seth Radcliffe in jail, read it, and gave it to Mr. Harper. Mr. Harper and a friend (who was acting as a confidential informant for the police) met with M.S. and her mother to go over the contents of the letter in an effort to prepare her to testify before the grand jury. M.S. said in the recording taken by the informant that the contents of the letter were accurate, although Mr. Harper testified that he knew that was false. Mr. Harper claimed that Mark Radcliffe had asked him to prepare M.S.

Mark Radcliffe claimed that he did not know that Seth Radcliffe's account was untrue. He had not spoken with Seth Radcliffe for several months before the kidnapping. Their relationship was difficult due to Seth's drug use. M.S.'s mother testified that she did not know until several months after the events that Seth Radcliffe had kidnapped her daughter and believed the letter was accurate. M.S. testified that, although she spent time with Mark Radcliffe and communicated with him by phone and text, Mark Radcliffe did not directly attempt to influence her testimony, and they did not discuss the kidnapping in any detail. Mark Radcliffe explained that he had initially doubted Seth Radcliffe's version of events, but ultimately believed it based on the behavior of M.S. and her parents. M.S. travelled with Mark Radcliffe to a preliminary hearing in North Carolina, and her parents seemed sympathetic to Seth.

M.S. confirmed that Mr. Harper began telling her what to say to the police the day after the kidnapping before she gave a statement, and continued to tell her how to testify, despite knowing

what had actually happened.  Mr. Harper gave rebuttal testimony following Mark Radcliffe's testimony, and again stated that he had told Mark Radcliffe the details that confirmed Seth Radcliffe had kidnapped M.S.  He also stated that Mark Radcliffe was careful to avoid implicating himself, and instead, directed Mr. Harper to communicate with M.S.

The Defendant moved for judgment of acquittal at the close of the Government's evidence and again at the close of all evidence.  The Court denied both motions.  The Defendant filed written motions following the jury verdict, renewing his motion for judgment of acquittal and seeking a new trial.

## STANDARD OF REVIEW

*A.  Rule 29*

Federal Rule of Criminal Procedure 29(a) ("Rule 29") states, in relevant part, that "[a]fter the government closes its evidence …, the court on the defendant's motion must enter a judgment of acquittal on any offense for which the evidence is insufficient to sustain a conviction.  The court may on its own consider whether the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29.  In its review, the court must " '[v]iew[ ] the evidence in the light most favorable to the Government,'" *United States v. Hickman,* 626 F.3d 756, 763 (4th Cir.2010) (quoting *United States v. Bynum,* 604 F.3d 161, 166 (4th Cir.2010)).  The Court must assume that the Government's evidence is credible, and draw all favorable inferences in the Government's favor.  *United States v. Gadsden*, 616 Fed.Appx. 539, 541 (4th Cir. 2015); *see also United States v. Boddy*, 2014 WL 6961695 (S.D.W.V. December 8, 2014) (slip op.)    However, "leaps of logic" are not permitted.  *Evans-Smith v. Taylor*, 19 F.3d 899, 908 n.22 (4th Cir. 1994.)  More precisely, "[a] judgment of acquittal based on the insufficiency of the evidence is a ruling by the court that as a

matter of law the government's evidence is insufficient to 'establish factual guilt' on the charges in the indictment." *United States v. Alvarez*, 351 F.3d 126, 129 (4th Cir. 2003) (quoting *Smalls v. Pennsylvania*, 476 U.S. 140, 144 (1986). The test for deciding a motion under Rule 29(a) is "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." *United States v. McCloskey*, 682 F.2d 468, 473 (4th Cir. 1982). If a "rational trier of fact" can find that the essential elements of a charged offense are supported by the evidence, the motion must be denied. *United States v. Singh*, 518 F.3d 236, 246 (4th Cir. 2008).

*B. Rule 33*

Rule 33(a) of the Federal Rules of Criminal Procedure provides that a court "may vacate any judgment and grant a new trial if the interest of justice so requires." When the motion is based on newly discovered evidence, it may be filed within three years after the verdict. Fed. R. Crim. P. 33(b)(1). When it is based on grounds other than newly discovered evidence, it must be filed within fourteen days after the verdict. Fed. R. Crim. P. 33(b)(2). "To receive a new trial based on newly discovered evidence under Rule 33, a defendant must demonstrate: (1) the evidence is newly discovered; (2) he has been diligent in uncovering it; (3) it is not merely cumulative or impeaching; (4) it is material to the issues involved; and (5) it would probably produce an acquittal." *United States v. Lighty*, 616 F.3d 321, 374 (4th Cir. 2010).

**DISCUSSION**

The Defendant argues that the evidence presented was insufficient to support the guilty verdict on either count. He argues that there was no evidence that anyone knew of or contemplated a federal proceeding prior to January 14, 2016, and it is therefore "impossible for the Defendant to have conspired to witness tamper during the broad time period alleged in [Count One of] the indictment." (Mot. for Acquittal, at 2.) The Defendant also reiterates his argument that the indictment is multiplicitous, and the convictions for both witness tampering under 18 U.S.C § 1512 and obstruction of justice under 18 U.S.C. § 1503 cannot stand.

The Defendant also seeks a new trial. He asserts that he has discovered evidence suggesting that the United States' key witness testified untruthfully, which the Court will address following a hearing.[3] In addition, the Defendant argues that the United States did not prove all elements of witness tampering or obstruction, because there was insufficient evidence that Mr. Radcliffe was aware that Seth Radcliffe had actually kidnapped M.S. The Defendant next asserts that the jury instruction for witness tampering, stating that an "official proceeding' need not be pending or about to be instituted at the time of the offense" was incorrect because the United States was required to show that Mr. Radcliffe contemplated "that a *federal* proceeding could be instituted." (Mot. for New Trial, at 4) (emphasis in original.)

---

3 The Court has permitted limited discovery and separate briefing as to this claim. The Defendant first asserted that Mr. Harper had told a family member that he intended to testify untruthfully during a telephone conversation recorded by the jail. Following review of the recorded jail calls, the Defendant asserts that the conversation may have taken place during a jail visit. He seeks a hearing to present testimony of the family member who reported the conversation. The Court finds it appropriate to hold a hearing in order to hear the evidence and weigh the credibility of any witness testimony. *See, e.g.*, *United States v. Wilson*, 624 F.3d 640, 663 (4th Cir. 2010) (when new evidence involves new or altered testimony, the district court must make a credibility determination to evaluate the likelihood that a jury "would reach a different result upon hearing the new evidence"); *United States v. King*, 232 F.Supp.2d 636 (E.D. Va. 2002) (granting a new trial where a government witness discussed his intention to offer false testimony with a fellow inmate).

The United States argues that the evidence is sufficient to support convictions on both counts. It cites the testimony of co-conspirator Jimmie Harper, together with corroborating phone records and text messages, recorded phone calls between Mr. Radcliffe and Seth Radcliffe, and the letter Seth Radcliffe wrote with a partially falsified account of the night of the kidnapping. The United States next argues that the jury instructions were substantively correct, and that any objection was waived because the Defendant did not object either during the charge conference or after the instructions were read to the jury. Finally, the United States argues that Counts One and Two are not multiplicitous. It asserts that witness tampering and obstruction of justice contain different elements, although the United States relied on much of the same evidence to prove both counts.

### A. *Sufficiency of the Evidence*

Viewing the evidence in the light most favorable to the United States, the Court finds that the jury's verdict was supported by sufficient evidence. Jimmie Harper testified that he and Mr. Radcliffe first spoke the night of the kidnapping, and continued to communicate frequently throughout the proceedings against Seth Radcliffe. Mr. Harper stated that he and Mr. Radcliffe agreed, on the night of the kidnapping, that they needed to talk to M.S. before she gave a police statement. According to Mr. Harper, M.S. described the incident to him in some detail the next morning. He passed those details, including the fact that M.S. had been forcibly taken and did not voluntarily accompany Seth Radcliffe, along to Mr. Radcliffe shortly after his conversation with M.S. Mr. Harper had multiple conversations with both M.S. and Mr. Radcliffe the morning of December 24, 2015, and he testified that he and Mr. Radcliffe shared ideas regarding how to convince M.S. not to tell the police she had been kidnapped. M.S. continued to seek advice from

8

Mr. Harper about how to respond to various aspects of the investigation, and Mr. Harper continued to discuss with Mr. Radcliffe what M.S. should do and say to minimize Seth Radcliffe's risk of prosecution for kidnapping.

In addition, the jury may have considered the letter written by Seth Radcliffe, which Mr. Harper used to help M.S. rehearse a consistent story for her testimony before the grand jury. Mr. Radcliffe admitted that he read that letter before passing it on to Mr. Harper. He testified that he believed the account in the letter was truthful. However, the final page of the letter contains a list of bullet points focused on M.S.'s feelings and thoughts during the kidnapping. One bullet point reads, "Did she [M.S.] tell Det. Gunther that I said I couldn't believe the gun didn't go off? That's a bullet to my head if so. We need to get her statement thrown out since she wasn't with her lawyer and advised of her right to deny talking to the police." (S. Radcliffe Letter, Def. Ex. 19, Document 177-12.) The letter repeatedly emphasizes that M.S. was not afraid Seth would harm her, that she was worried that Seth would kill himself, and that she encouraged him to drive to North Carolina and voluntarily accompanied him.

The letter, combined with the telephone records, could reasonably have persuaded the jury to believe Mr. Harper, rather than Mr. Radcliffe, on the question of whether Mr. Radcliffe knew that Seth had kidnapped M.S. The Defendant's challenge to the sufficiency of the evidence, at its core, rests on a challenge to the credibility of Mr. Harper. Mr. Harper testified that he knew, and told Mr. Radcliffe, that Seth had kidnapped M.S. soon after the kidnapping and Seth's arrest. Their discussions about what M.S. should say and how to influence her testimony, therefore, took place with the knowledge that they were attempting to persuade her to give false testimony. Mr. Radcliffe challenged that account. Mr. Harper had significant credibility issues. However, this

9

Court "cannot make its own credibility determinations, but must assume that the jury resolved all contradictions in testimony in favor of the Government." *United States v. Penniegraft*, 641 F.3d 566, 572 (4th Cir. 2011) (quoting *United States v. United Med. & Surgical Supply Corp.,* 989 F.2d 1390, 1402 (4th Cir.1993). Therefore, the Court must presume that the jury found Mr. Harper's testimony credible.[4] The Defendant's motion for judgment of acquittal based on insufficiency of the evidence should be denied.

### B. Jury Instructions

The Court provided the jury with the following elements to consider as to Count One, alleging witness tampering in violation of 18 U.S.C. § 1512:

> (1) That the Defendant, Mark Radcliffe, did knowingly conspire with another, namely, Jimmie Harper, Jr.
> (2) To corruptly persuade [M.S.]
> (3) Or attempted to do so
> (4) Or engaged in misleading conduct towards the said [M.S.]
> (5) With intent to influence, delay or prevent the testimony of the said [M.S.] in an official proceeding

(Jury Charge, at 17) (Document 173). With respect to the "official proceeding," the Court provided the following additional instructions, as relevant:

> "The defendant must have acted knowingly and with the unlawful intent to influence or prevent the testimony of the known person in an official proceeding."
>
> "It is not necessary for the United States to prove…that the defendant knew that the official proceeding was before a judge or court of the United States."
>
> "The term 'official proceeding' means a proceeding before a judge or court of the United States or a federal grand jury. The 'official

---

4 This finding is not intended to express any conclusion with respect to the Defendant's motion for a new trial based on asserted newly discovered evidence that Mr. Harper admitted to testifying untruthfully. The Court will address that motion separately.

proceeding' need not be pending or about to the instituted at the time of the offense."

(Jury Charge, at 17-18.) As the United States notes, no timely objection was made, pursuant to Federal Rule of Criminal Procedure 30(d), and only plain-error review is available.

The Court finds that the instructions given are consistent with both the statutory language and the case law regarding § 1512. Section 1512(f)(1) provides that "an official proceeding need not be pending or about to be instituted at the time of the offense." Section 1512(g)(1) specifically provides that "no state of mind need be proved with respect to the circumstance that the official proceeding…is before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a Federal grand jury, or a Federal Government agency." The Defendant relies on *Arthur Andersen LLP v. United States*, wherein the United States Supreme Court held that, while the official proceeding need not be pending, it did need to be foreseen. 544 U.S. 696, 707–08 (2005) (finding that "A 'knowingly ... corrup[t] persaude[r]' cannot be someone who persuades others to shred documents under a document retention policy when he does not have in contemplation any particular official proceeding in which those documents might be material.") The instructions given did not suggest that there was no need for the Defendant to foresee an official proceeding.

Even if an additional instruction stating the *Arthur Anderson* holding would have been appropriate, the lack of such an instruction did not prejudice the Defendant in this case. Here, while Mr. Harper and Mr. Radcliffe may not have known that the proceeding would be federal, it cannot reasonably be suggested that no proceeding was contemplated with respect to Seth Radcliffe. Seth had been arrested and was in jail. Mr. Harper and Mr. Radcliffe, as well as Seth, discussed the possibility of kidnapping charges. Clearly, all concerned foresaw official

proceedings, and attempts to sway M.S.'s testimony were related to those proceedings. Therefore, the Defendant's motion for a new trial based on the jury instructions for Count One should be denied.

   *C. Multiplicity*

   The Second Superseding Indictment alleges that Mr. Radcliffe participated in a conspiracy to violate 18 U.S.C. § 1512(b)(1) between December 23, 2015 and January 26, 2016, and aided and abetted the violation of 18 U.S.C. § 1503 from January 24, 2016 to January 26, 2016. The Court previously addressed the Defendant's claim that Counts One and Two are multiplicitous in ruling on a motion to dismiss prior to the trial. (Mem. Op. and Order, Document 161.) The Court hereby incorporates its findings and analysis contained therein. In summary, the Court found that Fourth Circuit case law permitted the United States to move forward to trial on both Count One and Count Two, but recognized that further consideration could be needed to "determine whether multiple sentences may be imposed…if the United States obtains convictions on both counts." (*Id.* at 6.)

   The Second Circuit has held that witness tampering may be prosecuted only under § 1512, and cannot be prosecuted under § 1503. *United States v. Masterpol*, 940 F.2d 760, 763 (2d Cir. 1991). Other circuits have not followed suit. *See, e.g.*, *United States v. Ladum*, 141 F.3d 1328, 1333 (9th Cir. 1998); *United States v. Tackett*, 113 F.3d 603, 607 (6th Cir. 1997). In *United States v. Kenny*, the Fourth Circuit held that "improper conduct involving a witness" could be prosecuted under § 1503, although § 1512 more specifically addresses such allegations. 973 F.2d 339, 342 (4th Cir. 1992). In that case, the defendant was charged with both witness tampering and obstruction of justice, but was convicted only of obstruction of justice, under § 1503. The Fourth

Circuit specified that "[t]he existence of a more narrowly tailored statute does not necessarily prevent prosecution under a broader statute, so long as the defendant is not punished under both statutes for the same conduct." *Id.* Thus, the Fourth Circuit has made clear that Mr. Radcliffe's conduct could be prosecuted under *either* § 1503 or §1512. It is not clear, however, that Mr. Radcliffe may be convicted and sentenced under *both* sections.

The Double Jeopardy Clause, as relevant herein, protects against "multiple punishments for the same offense." *United States v. Martin*, 523 F.3d 281, 290 (4th Cir. 2008). A single course of conduct may be subject to multiple punishments if it violates more than one statute, if Congress so intended. *Id.*, (quoting *United States v. Chandia,* 514 F.3d 365, 371-72 (4th Cir.2008)). If the statutory language does not indicate that Congress intended multiple punishments, courts proceed to consider the statutory construction to determine whether the two statutes are the same offense. "Inquiries concerning whether two charges are actually the 'same offense' normally…involve an indictment which has charged multiple statutory offenses premised on the same conduct, and require us to look to whether each charged offense requires proof of some fact that the other does not require. *United States v. Goodine*, 400 F.3d 202, 207 (4th Cir. 2005) (emphasis omitted). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

The statutory language of §§ 1512 and 1503 does not indicate that Congress intended to permit multiple punishments. Thus, it is necessary to compare the elements of the two offenses.

The Court instructed the jury that Count One, witness tampering in violation of § 1512(b)(1), required proof of the following:

> (1) That the Defendant, Mark Radcliffe, did knowingly conspire with another, namely, Jimmie Harper, Jr.
> (2) To corruptly persuade [M.S.]
> (3) Or attempted to do so
> (4) Or engaged in misleading conduct towards the said [M.S.]
> (5) With intent to influence, delay or prevent the testimony of the said [M.S.] in an official proceeding

(Jury Charge, at 17). As to Count Two, aiding and abetting obstruction of justice in violation of 18 U.S.C. §§ 2 & 1503, the Court instructed the jury that it was required to find:

> (1) That the Defendant, Mark Radcliffe, knowingly aided and abetted Jimmie Harper, Jr.
> (2) To corruptly
> (3) Influence, obstruct, impede or
> (4) To endeavor to influence, obstruct, or impede
> (5) The due administration of justice, and
> (6) That the Defendant knew that the Federal Grand Jury in the Southern District of West Virginia was pending at the time.

(Jury Charge, at 21).

The First Circuit has considered the question of whether "convictions for violating section 1512(b)(1) and section 1503 must be vacated because they constitute multiple punishments for the same offense." *United States v. LeMoure*, 474 F.3d 37, 43 (1st Cir. 2007). It found that § 1512(b)(1) "requires proof that one intend to 'influence, delay, or prevent…testimony of any person," while § 1503 does not. *Id.* Section 1503 "requires an attempt to obstruct a pending judicial proceeding," while § 1512 does not require "a pending proceeding." *Id.* Therefore, the First Circuit found that charges under both statutes could be maintained.[5] The Eighth Circuit has

---

5 The Court notes that the facts in *LeMoure* suggest a much more involved scheme, and each charge specified different witnesses, testimony, or proceedings.

also upheld a conviction under both § 1512 and § 1503, because "§ 1503 requires proof of the defendant's knowledge of a pending judicial proceeding, which is expressly not an element of a violation of §1512." *United States v. Risken*, 788 F.2d 1361, 1369 (8th Cir. 1986)

At least under the circumstances presented here, where the United States did not attempt to differentiate the factual basis of the two charges, the Court cannot agree. The Fourth Circuit has recognized § 1512 as more specifically addressing conduct that may also be prosecuted under the 'omnibus clause' of § 1503. *United States v. Kenny*, 973 F.2d 339, 342 (4th Cir. 1992); *see also United States v. Grubb*, 11 F.3d 426, 438, fn. 22 (4th Cir. 1993) (citing *Kenny* and noting the holding that § 1503 "criminalizes the corrupt persuasion of a grand jury witness" "even though the same conduct is chargeable under 18 U.S.C. § 1512.") Other circuits, analyzing the legislative history, have provided similar descriptions of the scope of the two statutes. *See, e.g.*, *United States v. Ladum*, 141 F.3d 1328, 1338 (9th Cir. 1998); *United States v. Tackett*, 113 F.3d 603, 607 (6th Cir. 1997) (noting that the omnibus clause "has been used to prosecute both crimes that clearly fell within § 1503's more specific provisions and also conduct that those provisions could not reach," and concluding that it continued to cover witness tampering after Congress moved the specific witness tampering provisions to §§ 1512 and 1513.) If § 1512 specifically addresses conduct generally proscribed by § 1503, a set of facts supporting a conviction under § 1512 would logically also support a conviction under § 1503.

The fact that the official proceeding required under both statutes must be "pending" under § 1503, but may be merely "foreseen" under § 1512, is again a question of scope, rather than one of different elements. Based on the evidence, Mr. Radcliffe and Mr. Harper began attempting to influence M.S.'s testimony immediately after the kidnapping and Seth Radcliffe's arrest. That

15

course of conduct continued when they learned the details of the "official proceeding:" the federal grand jury scheduled for January 26, 2016. Likewise, § 1512 requires an intent to influence, delay or prevent testimony, while § 1503 more broadly requires knowingly, corruptly endeavoring to influence, obstruct, or impede the due administration of justice. Other methods of impeding the due administration of justice can be prosecuted under § 1503, but actions taken with the intent to influence, delay, or prevent testimony constitute one method that suffices to satisfy that corresponding element in § 1503.

The elements are not identical, but neither does "each provision require[] proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Here, both provisions require proof of the grand jury proceeding, though § 1512 covers conduct beginning before the grand jury was officially pending, or before Mr. Radcliffe knew of the grand jury proceeding. Both provisions required proof that Mr. Radcliffe and Mr. Harper attempted to influence M.S.'s testimony. Again, although other types of obstructive conduct *could* support a conviction under § 1503, the United States' evidence focused only on the attempt to influence M.S.'s testimony. It cannot be said that the attempt to influence M.S.'s testimony is a fact that had to be proved for Count Two, but was unnecessary as to Count One. The United States has not pointed to any facts that were required for Count Two, and not for Count One. Therefore, the Court finds that punishment under both provisions would violate the Double Jeopardy Clause of the United States Constitution. The Defendant's motion for judgment of acquittal as to Count Two should be granted.

The Court's conclusion that the Defendant cannot be punished under both provisions is further supported by comparison to application of the Double Jeopardy Clause in other

16

circumstances. In *U.S. v. Martin*, 523 F.3d 281 (4th Cir. 2008), the Fourth Circuit found that the defendant could be punished for using fire to commit a felony, which does not require property damage, but does require a predicate felony offense, as well as arson, which does require property damage and does not require a predicate felony. Although the two statutes overlap, they are directed at different harms, and contain different elements. In *Rutledge v. United States*, the Supreme Court found that the defendant could not be sentenced for both conspiracy to distribute controlled substances and conducting a continuing criminal enterprise, both for the same agreements and acts involving distribution of cocaine. 517 U.S. 292, 298 (1996) (rejecting an argument that "while the § 846 conspiracy requires proof of an actual agreement among the parties, the 'in concert' element of the CCE offense might be satisfied by something less.")

The Eastern District of Virginia compared kidnapping, with elements of unlawful seizure and holding, with hostage taking, having elements of: "(1) seizure or detention of another person; (2) a threat to kill, to injure, or to continue to detain; and (3) the purpose to compel a third person or a governmental organization to do or abstain from doing any act. *United States v. Salad*, 907 F. Supp. 2d 743, 747 (E.D. Va. 2012). The court concluded that "the offense of kidnapping does not require proof of any fact not required to prove hostage taking." *Id.* In addition, the court found that the specific purpose element of hostage taking—to compel a third party or government—would "always satisfy the more general purpose requirement of kidnapping," and therefore could not constitute a difference in elements. *Id.* at 748. The instant case is more comparable to *Rutledge* and *Salad*, with a broader statute and a more specific statute reaching the same conduct, than to *Martin*, with the same course of conduct violating overlapping, but distinct, statutes.

**CONCLUSION**

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Renewed Motion for Judgment of Acquittal* (Document 179) be **GRANTED** to the extent it seeks dismissal of Count Two on the grounds that it is multiplicitous, and **DENIED** to the extent it seeks dismissal of both counts based on insufficiency of the evidence.

The Court further **ORDERS** that the *Motion for New Trial* (Document 180) be **DENIED** to the extent it seeks a new trial based on the jury instructions as to Count One, but **HELD IN ABEYANCE** with respect to the claims regarding statements by Jimmie Harper. The Court **ORDERS** that a hearing regarding Mr. Harper's testimony be **SCHEDULED** for **Wednesday, May 3, 2017, at 10:00 a.m.**

Finally, the Court **ORDERS** that Count Two of the Second Superseding Indictment be **DISMISSED**.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: April 11, 2017

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA